FILED IN OPEN COURT
TIMOTHY M. O'BRIEN, CLERK
BY_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### (Kansas City Docket)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 11-20053-KHV |
| | ) |
| DUSTIN SILLINGS, | ) |
| | ) |
| Defendant. | ) |

## PLEA AGREEMENT

The United States of America, by and through United States Attorney Barry R. Grissom, and Assistant United States Attorney Tristram W. Hunt, and Dustin Sillings, the defendant, personally and by and through defendant's counsel, John McManman Baker, III, hereby enter into the following plea agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the indictment, to wit: conspiracy against rights, in violation of Title 18, United States Code, Section 241. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the indictment to which the defendant has agreed to plead guilty is not more than 10 years imprisonment, not more than a $250,000 fine, not more than 3 years of supervised release, and a $100 mandatory special assessment fee. The United States agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

**2.** **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the

offense to which the defendant is pleading guilty are as follows:

a. The Federal Bureau of Investigation (FBI) opened a public corruption investigation of the Kansas City, Kansas Police Department (KCKPD) Selective Crime Occurrence Reduction Enforcement Unit (SCORE Unit). On January 4, 2011, the FBI and the KCKPD Internal Affairs Unit conducted a sting operation at 730 Everett, Kansas City, Kansas. The residence was monitored via audio and video. A total of $2500 in cash was placed in two areas of the house and in a vehicle parked in the driveway of 730 Everett. Electronic hand held games and a music player were placed in the residence where they could be monitored. Additionally, drugs and one handgun were also placed in the residence where they could also be observed.

b. On January 4, 2011, at approximately 1:00 p.m., twelve members of the SCORE Unit served what they believed was a search warrant from Sedgwick County, Kansas on 730 Everett. Through video and audio surveillance, FBI Special Agent (SA) Schaefer observed SCORE Unit Officer Darrell M. Forrest, taking an envelope containing $300 in cash from the night stand in the upstairs bedroom. SA Schaefer also observed Officer Forrest taking two video game cartridge boxes and an Apple iPod Touch music player. Through video and audio surveillance, SA Schaefer observed SCORE Unit Officer Jeffrey M. Bell, taking a Nintendo DS hand-held game system containing one Nintendo DS game cartridge from the upstairs bedroom. SA Schaefer also observed Officer Bell talking with Officer Forrest about the Nintendo DS and/or games. Further, SCORE Unit Officer Dustin Sillings was overheard saying that it was a pity the house did not have more "swag."

c. At approximately 2:30 p.m., Officer Bell and Officer Forrest were arrested. Officer Forrest was read his *Miranda* rights, signed a waiver of his rights, and gave a statement. Officer Forrest admitted to stealing $300, two video game cartridges, and an Apple iPod Touch from 730 Everett. Officer Forrest took the aforementioned items out of his pockets and gave them to SA Schaefer and KCKPD Internal Affairs Captain Greg Lawson. Officer Bell was read his *Miranda* rights, signed a waiver of his rights, and gave statements. During these statements, Officer Bell admitted to stealing the above-mentioned Nintendo DS and game from 730 Everett. Officer Bell provided the aforementioned items to SA Schaefer and Captain Lawson. Officer Bell admitted taking three or four PlayStation games and one PlayStation player (PSP) during prior SCORE Unit search warrants. Officer Bell stated that he gave the PSP and games to another person and that he believed the other person still had these items. Officer Sillings was read his *Miranda* rights, signed a waiver of his rights, and gave statements. He admitted taking $340 during the search at 730 Everett. In addition, Officer Sillings admitted taking five or six PSP 3 games, belonging to unknown persons, during prior SCORE search warrants. Officer Sillings stated that he gave the games to other persons. The other persons played these games or traded them into GameStop for in-store credit.

2

d.      On January 14, 2011, KCKPD sergeants Cross and Simms conducted an inventory of KCKPD patrol car #237. Car #237 had been assigned to Officer Forrest from December 11, 2010 to January 4, 2011. Car #237 was parked and locked from January 4, 2011 until the inventory on January 14, 2011. Officer Forrest was placed on leave January 4, 2011 and was not allowed access to car #237. Sergeants Simms and Cross found a Digital camcorder, black/silver in color, brand name "FLIP", model # MinoHD M2120, Serial # OS09329XXXX on the rear floorboard behind the driver's seat. The camcorder was underneath some clothing.

e.      On July 7, 2010, Officers Bell, Forrest and Sillings participated in a search warrant that the SCORE Unit executed at XXXX Haskell, Kansas City, Kansas.

f.      On July 8, 2010, Tawana L. Webster, a resident of XXXX Haskell, reported to KCKPD Internal Affairs Unit that she had several items stolen from her residence during the search by the SCORE Unit. Webster stated that she had an Apple iPhone, a PSP, $100 cash and a FLIP camcorder (silver/black) stolen during the search.

g.      On January 26, 2011, Ms. Webster provided the empty boxes for the stolen PSP and FLIP camcorder to SA Schaefer. FLIP Corporation were contacted and could not match the camcorder box which Ms. Webster gave SA Schaefer to the FLIP recovered from Car # 237 because the company did not place the unit serial number on the boxes they were shipped in. Later, Ms. Webster was shown the FLIP camcorder recovered from Car #237, and stated it was hers.

h.      Through database checks, KCKPD Internal Affairs Detective Jon Kelley was unable to establish that a PSP with serial number AV206387394, was re-sold or otherwise traded-in.

I.      On March 19, 2011, a GameStop Customer Service agent told FBI SA Witt that GameStop did not have any records showing that a PSP with serial number AV206387394 was traded-in or purchased. GameStop is a national video game store which allows customers to trade-in used video games and players for in-store credit.

j.      On April 13, 2011, FBI agents obtained a search warrant for Officer Bell's house to search for the PSP player taken from XXXX Haskell. A PSP player was recovered. Sony Corporation were contacted and confirmed that the PSP seized from Officer Bell's house was shipped in the box Ms. Webster gave to FBI agents.

3

**3.     Application of the Sentencing Guidelines.**     The parties request that the United States Sentencing Guidelines (Guidelines) be applied by the Court to calculate the applicable sentence in this case.  The defendant further waives any right to have facts that determine the offense level under the Guidelines alleged in an indictment and found by a jury beyond a reasonable doubt; agrees that facts that determine the offense level will be found by the Court at sentencing by a preponderance of the evidence and agrees that the Court may consider any reliable evidence, including hearsay; and the defendant agrees to waive all constitutional challenges to the validity of the Guidelines.  The government agrees to request a sentence within the guideline range determined to be appropriate by the Court.  However, the defendant will be free to ask for a variance.  The parties understand this agreement binds the parties only and does not bind the Court.

**4.     Relevant Conduct.**     Both the United States and the defendant understand that the conduct charged in any dismissed counts of the indictment is to be considered as well as all other uncharged related criminal activity as relevant conduct for purposes of calculating the offense level for Count 1, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

**5.     Government's Agreements.**     In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

> a.     To not file any additional charges against the defendant arising out of the facts forming the basis for the present indictment;
>
> b.     To recommend a sentence at the mid-point of the applicable guideline range;

4

c.  To recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, the United States will move at the time of sentencing for the defendant to receive an additional one (1) level reduction for acceptance of responsibility because the defendant timely notified the government of his intention to enter a plea of guilty. However, the government's obligation concerning acceptance of responsibility is contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct that the court determines to be true, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in additional criminal conduct, the United States reserves the right to withdraw this recommendation without breaching this agreement;

d.  To not request an upward departure from the applicable sentencing guideline range;

e.  To agree that U.S.S.G. § 2B1.1(b)(13) should not be applied by the Court to calculate the sentence because U.S.S.G. § 2B1.1(b)(13) is not applicable to violations of Title 18, United States Code, Section 241, and U.S.S.G. § 2H1.1 does not contain a cross reference to U.S.S.G. § 2B1.1(b)(13).

In the event the defendant breaches or violates this plea agreement or otherwise fails to adhere to its terms, the United States shall not be bound by this paragraph and may pursue any additional charges arising from the criminal activity under investigation as well as any perjury, false statement, or obstruction of justice charges which may have occurred. The defendant understands and agrees that in the event the defendant violates this plea agreement, all statements made by the defendant subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against the defendant in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal

5

rule that pertains to the admissibility of any statements made by the defendant subsequent to this

plea agreement.

**6.     Defendant's Agreements.**     The defendant agrees to cooperate fully and

truthfully with the United States as follows:

> a.     Defendant agrees to provide truthful, complete, and accurate information
>        and testimony in the trial of this matter, before any grand jury proceeding,
>        or in any related hearing;
>
> b.     Defendant agrees to provide all information concerning the defendant's
>        knowledge of, and participation in, the offenses charged in the indictment
>        and all related conduct;
>
> c.     Defendant agrees that if the United States determines the defendant has
>        not provided full and truthful cooperation, or has committed any local,
>        state, or federal crime between the date of this plea agreement and his
>        sentencing, or has otherwise violated any other provision of this plea
>        agreement, the plea agreement may be voided and the defendant shall be
>        subject to prosecution for any federal crime of which the United States has
>        knowledge including, but not limited to, perjury, obstruction of justice,
>        and any substantive offenses arising from this investigation. Such
>        prosecution may be based upon any information provided by the defendant
>        during the course of the defendant's cooperation, or upon leads derived
>        therefrom, and this information may be used as evidence against the
>        defendant. In addition, the defendant's previously entered plea of guilty
>        will remain in effect and cannot be withdrawn;
>
> d.     Defendant agrees to fully and completely assist the United States in the
>        identification and recovery of forfeitable assets, either domestic or foreign,
>        which have been acquired directly or indirectly through the unlawful
>        activities of the defendant, co-defendants, and/or co-conspirators and
>        further agrees to not contest any forfeiture proceedings.

**7.     Substantial Assistance.**     While the government recognizes the defendant has

cooperated, the defendant acknowledges that substantial assistance has not yet been provided by

the defendant within the meaning of U.S.S.G. § 5K1.1 and Title 18, United States Code

§ 3553(e). Upon the determination by the United States the defendant has provided substantial

6

assistance, the United States may in its sole and exclusive discretion, request that the Court consider reducing the sentence the defendant would otherwise receive under the applicable statutes and/or sentencing guidelines pursuant to Title 18, U.S.C. § 3553(e), Title 28, U.S.C. § 994(n), and U.S.S.G. § 5K1.1.

**8.** **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence the defendant will receive.

**9.** **Information Provided by Defendant.** The United States agrees not to use new information the defendant provides about the defendant's own criminal conduct except as specifically authorized by U.S.S.G. § 1B1.8. As such, this information may be revealed to the Court but may not be used against the defendant in determining the defendant's applicable guideline range or departing above his guideline range. Defendant understands and agrees, however, that under U.S.S.G. § 1B1.8, there shall be no such restrictions on the use of the information: (1) previously known to the United States; (2) revealed to the United States by, or discoverable through, an independent source; (3) in a prosecution for perjury or giving a false statement; (4) in the event there is a breach of this agreement; or (5) in determining whether and to what extent a downward departure as a result of a government motion pursuant to Title 18, U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 is warranted.

**10.** **Withdrawal of Plea Not Permitted.** The defendant understands that if the court accepts this plea agreement but imposes a sentence with which the defendant does not agree, the defendant will not be permitted to withdraw this plea of guilty.

7

**11.    Payment of Special Assessment.**    The defendant understands that a mandatory special assessment of $100 per count of conviction will be entered against the defendant at the time of sentencing. The defendant agrees to deliver to the clerk of the court payment in the appropriate amount no later than the day of plea. If the defendant fails to make full payment of the special assessment the United States will no longer be bound by the provisions contained in Section 5(b) of this agreement. The burden of establishing an inability to pay the required special assessment lies with the defendant.

**12.    Waiver of Appeal and Collateral Attack.**    The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as

8

authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

**13.     Waiver of FOIA Request.**     The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, U.S.C. § 552, or the Privacy Act of 1974, Title 5, U.S.C. § 552a.

**14.     Waiver of Claim for Attorney's Fees.**     The defendant waives all claims under the Hyde Amendment, Title 18, U.S.C. § 3006A, for attorneys fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**15.     Deportation Consequences.**     The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

**16.     Identification of Assets & Agreement Concerning Monetary Penalties.**

9

a. The defendant agrees to disclose to law enforcement officials the existence and status of all monies, property or assets, of any kind in which he has sole, joint or partial ownership or control OR was derived from or acquired as a result of, or used to facilitate the commission of the crimes charged. Furthermore, the defendant agrees to provide all of his financial information to the United States Attorneys Office at the same time that he provides such to the United States Probation Office as part of the presentence investigation procedure. Defendant consents to the release of the information from the United States Probation Office to the United States Attorneys Office should he neglect to separately provide such information to the United States Attorneys Office. Moreover, defendant agrees, if requested by either the United States Attorneys Office or the United States Probation Office, to participate in a pre-sentencing debtor's examination, which may include the taking of information from the defendant under oath.

b. The defendant further agrees to prevent the disbursement of any monies, property or assets derived from the crimes charged, or otherwise under his custody or control. If the defendant fails to comply with this provision the United States is relieved of its obligation to recommend a sentencing reduction for Acceptance of Responsibility pursuant to § 3E1.1, to file a 5K1.1 motion, or any other sentencing recommendations contained in this agreement.

c. The defendant understands and agrees that, pursuant to Title 18, United States Code, Section 3613, whatever monetary penalties are imposed by the court will be due and payable immediately and subject to immediate enforcement by the United States as provided for in Section 3613. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the

10

defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

**17.  Full Disclosure by United States.**  The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities.  The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty.  The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement.  The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

**18.  Parties to the Agreement.**  The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

**19.  No Other Agreements.**  The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel.  Further, the defendant acknowledges that he has read the plea agreement, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion.  The defendant further

11

understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily.

Barry R. Grissom
U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas, 66101
Telephone #: 913-551-6730
Fax #: 913-551-6541
Ks.S.Ct. #:10866

Date: __1-17-12__

Tristram W. Hunt
Assistant U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas, 66101
Telephone #: 913-551-6730
Fax #: 913-551-6541
Ks.S.Ct. #:18196

Date: __1. 17. 2012__

Dustin Sillings
Defendant

Date: __1-17-2012__

John McManman Baker, III
Sean Baker, Attorney at Law, P.A.
753 State Ave., Suite #388
Kansas City, KS 66101
KS Supreme Ct #20215

Date: __1/17/12__

12

913-281-6601
Fax: 913-281-6602
Email: bakerlawoffice@sbcglobal.net